[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13363
Non-Argument Calendar

_____

BIA Nos. A98-552-596 & A98-552-597

JAVIER YAMIT ZAPATA,
PAMELA FIGUEROA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 31, 2008)

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Javier Yamit Zapata and his wife, Pamela Figueroa, proceeding *pro se*, seek

review of the Board of Immigration Appeals's ("BIA") decision adopting and affirming the Immigration Judge's ("IJ") order denying Zapata's application for asylum and withholding of removal.[1] Figueroa's claim was derivative to Zapata's asylum claim.[2] On appeal, Zapata briefly states that the IJ erred in finding him ineligible for asylum. In addition, Zapata argues that the IJ erred in denying him withholding of removal based on its finding that he failed to establish a nexus between his fear of future persecution in his home country, Colombia, and his political opinion or membership in a social group.

## I.

"We review our subject matter jurisdiction de novo." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). An application for asylum must be filed within one year of an alien's arrival in the United States, unless the alien can demonstrate changed or extraordinary circumstances relating to the delay in filing the asylum application. Immigration

---

[1] Zapata also applied for relief under the United Nations Convention Against Torture and Other Cruel, Inhumane, or Degrading Treatment or Punishment ("CAT"). Because he did not exhaust his administrative remedies regarding that claim after the IJ denied it, we lack jurisdiction to consider it. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). Alternatively, we decline to consider the CAT relief claim because Zapata abandoned it after failing to raise the issue in his brief on appeal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

[2] To the extent that Figueroa asserted any derivative claim to Zapata's withholding of removal claim, that must automatically fail because "there are no derivative benefits associated with a grant of withholding of removal." *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (per curiam).

2

and Nationality Act ("INA") § 208(a)(2), 8 U.S.C. § 1158(a)(2). We lack jurisdiction to review the IJ's determination that an asylum applicant filed an untimely application and failed to establish changed or extraordinary circumstances to excuse his untimely filing. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) (per curiam) (citing INA § 208 (a)(3), 8 U.S.C. § 1158(a)(3)).

The IJ found that Zapata's asylum application was untimely and that no exceptions excused the untimeliness, thus we lack jurisdiction to review its denial of Zapata's asylum application on appeal. Accordingly, we dismiss the petition regarding Zapata's asylum claim, and Figueroa's derivative claim.

## II.

When the BIA expressly adopts and affirms the IJ's opinion, as it did in this instance, we only review the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

The IJ's factual findings are reviewed under the substantial evidence test, and we must affirm the IJ's decision based on those findings "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (internal quotation marks omitted). Under this highly deferential test, we may not reweigh the evidence, and a factual finding may only be reversed if the record compels a

3

reversal.  *Id.*

To qualify for withholding of removal under the INA, an alien must show that his life or freedom would be threatened, in the country to which he would be removed, on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  Under this standard, an alien must prove that it is "more likely than not" that he will be persecuted upon returning to his country.  *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006).  The statute protects against persecution by both government forces and non-governmental groups that the government cannot control.  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004) (per curiam).

An applicant for withholding of removal may satisfy his burden of proof in one of two ways.  8 C.F.R. § 208.16(b).  First, an alien may establish past persecution based on a protected ground, which creates a rebuttable presumption that his life or freedom would be threatened upon return to his country.  *See Sanchez*, 392 F.3d at 438.  The government may rebut that presumption by showing, by a preponderance of evidence, that the applicant's life or freedom would not be threatened because (1) a fundamental change in circumstances occurred, or (2) the applicant could relocate within the country to avoid the future threat.  *Id.*  Second, an alien may show that it is more likely than not that he would

4

be persecuted on account of a protected ground upon removal to his country, unless relocation within the country would avoid the threat and relocation would be reasonable to expect. 8 C.F.R. § 208.16(b)(2).

Under either method of satisfying the burden of proof for withholding of removal, the applicant must establish a nexus between the past or future persecution and one of the five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 C.F.R. § 208.16(b). The application must show that the persecution was motivated, at least in part, by a protected ground. *Tan*, 446 F.3d at 1375 (noting that the protected ground need not be the sole basis for the persecution). An imputed political opinion or social group membership, whether correctly or wrongly attributed, may constitute a basis for satisfying the nexus test. *See Al Najjar*, 257 F.3d at 1289.

The nexus test refers to persecution on account of the victim's political opinion or social group membership, rather than the persecutor's. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482, 112 S. Ct. 812, 816, 117 L. Ed. 2d 38 (1992). Also, criminal activity and acts of private violence and personal retribution do not constitute evidence of persecution on account of a statutorily protected ground. *Sanchez*, 392 F.3d at 438.

Substantial evidence supported the IJ's denial of withholding of removal

based on its finding that Zapata's past persecution, or fear of future persecution, was not on account of a protected ground. The record supports the IJ's findings in this regard because it shows that Zapata's past persecution may have resulted from two possible motivations, which were unrelated to any protected grounds: (1) his acceptance of money from the persecutors to pay for tuition and failure to pay back the money; and (2) his refusal to join the persecutors in supporting the Revolutionary Armed Forces of Colombia ("FARC"). Moreover, the record supports the IJ's refusal to recognize any connection between the possible persecution Zapata suffered and a political opinion that his persecutors imputed to him.

Even assuming, *arguendo*, that Zapata's opposition to the FARC's political views constituted an affirmative political opinion or that his affiliation with a military school constituted membership in a particular social group, substantial evidence supported the IJ's findings. The evidence in the record does not compel a finding that Zapata established a nexus, especially in light of the evidence showing that the persecution might have been motivated by unprotected grounds. Accordingly, we deny the petition regarding Zapata's withholding of removal claim.

**DISMISSED, IN PART; DENIED, IN PART.**